IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: DECADE, S.A.C., LLC, et al., <br><br> Debtors. | Chapter 7 <br> Case No. 18-11668 (JKS) <br> (Jointly Administered) |
| XXIII CAPITAL LIMITED, <br><br> Appellant, <br> v. <br><br> AARON GOODWIN, ERIC GOODWIN, and DAVID W. CARICKOFF, solely in his capacity as chapter 7 Trustee for the estates of Decade S.A.C., LLC, et al., <br><br> Appellees. | Adv. No. 19-50095 (JKS) <br><br> C.A. No. 23-209 (MN) |

## MEMORANDUM OPINION

Ricardo Palacio, ASHBY & GEDDES, P.A., Wilmington, DE; Patrick E. Fitzmaurice, Brian L. Beckerman, Stephanie M. Coughlan, PILLSBURY WINTHROP SHAW PITTMAN LLP, New York, NY – Attorneys for XXIII Capital Limited.

Frederick B. Rosner, Zhao Liu, THE ROSNER LAW GROUP LLC, Wilmington, DE; Keith Miller, Adam Mandelsberg, PERKINS COIE LLP, New York, NY – Attorneys for Aaron Goodwin and Eric Goodwin.

Alan M. Root, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, DE – Attorney for David W. Carickhoff, Chapter 7 Trustee.

March 28, 2025
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE:**

Following years of litigation between the parties, a recent settlement has resolved most issues. Pending before the Court is an appeal by XXIII Capital Limited ("23 Capital") from the Bankruptcy Court's February 17, 2022 Memorandum Order (Adv. D.I. 296)[1] ("the Disqualification Order"), and "all Orders leading thereto," including, specifically, certain portions of the Bankruptcy Court's December 27, 2021 post-trial opinion containing findings of fact and conclusions of law (Adv. D.I. 270) ("Declaratory Judgment Opinion"). For the reasons set forth herein, the Disqualification Order is reversed. To the extent the appeal seeks to disturb the Declaratory Judgment Opinion, this Court lacks jurisdiction to review the merits of 23 Capital's released claims, and that portion of the appeal is dismissed.

**I.     BACKGROUND**

   **A.     The Parties and the Prepetition Agreement**

The Debtors were formed in early 2016 by Christopher Aden ("Aden") and Dorsey James ("James") for the purpose of acquiring sports agencies, including two athlete management businesses, Goodwin Associates Management Enterprises, Inc. ("GAME") and Goodwin Sports Management, Inc. ("GSM"), owned and operated by Aaron Goodwin ("Aaron") and Eric Goodwin ("Eric, together with Aaron, "the Goodwins"), respectively. (A238 ¶¶ 1-3; A803–A804 ¶¶ 74, 82). 23 Capital, a lender in the sports, music and entertainment industry, agreed to loan Decade $25,000,000 to fund its acquisitions ("the Loan"). (A2).

To secure the Loan, 23 Capital received: "[s]ecurity (by way of absolute assignment or other) over all contracted receivables" valued at "a minimum of $35.5m from 2016 onwards," as

---

[1]     The docket of the adversary proceeding, *Carickhoff v. Aaron Goodwin, et al.*, Adv. No. 19-50095 (JKS) (Bankr. D. Del.), is cited herein as "Adv. D.I. __." The appendix (D.I. 16-17) filed in support of 23 Capital's opening brief is cited herein as "A__," and the appendix (D.I. 23) filed in support of the Goodwins' answering brief is cited herein as "B__."

well as "[s]ecurity over all future receivables of the various businesses" as collateral for the Loan; and "the rights to collect all gross income received by the company ahead of any other connected or 3rd party interest." (A730 ¶ 35). Decade's purchase of GAME and GSM closed on or around February 22, 2016, when the Share Purchase Agreement ("SPA") and related documents were fully executed. (A746 ¶94). Under the SPA, Decade agreed to pay the Goodwins $35 million in exchange for their ownership in GAME and GSM, payable $9.5 million on closing (using funds from the Loan) and a $25.5 million promissory note. (A252 ¶¶ 86, 87).

By November 2016, Decade began experiencing liquidity issues and was unable to service the Loan or pay its employees. (A258–A259 ¶¶ 111-15). On September 12, 2017, 23 Capital filed suit against Decade, Aden, James, and the Goodwins in the United States District Court for the Southern District of New York to try and collect the amounts owed under the Loan. *See XXIII Capital Limited v. Decade S.A.C., LLC, et al.*, No. 1:17-cv-06910-GHW ("the SDNY Action"). In the SDNY Action, 23 Capital asserted that, as of June 29, 2018, the outstanding obligations under the Loan totaled no less than $25,813,306.85 and obtained a judgment in that amount against Aden and James. (*See id.*).

On July 16, 2018, Decade, S.A.C., LLC filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On August 28, 2018, the Bankruptcy Court appointed the Trustee.

### B.      The Stipulation and Retention Order

On October 15, 2018, the Trustee filed motions seeking approval of the Stipulation that settled 23 Capital's and the Debtors' claims against each other by granting 23 Capital – the Debtors' senior secured creditor – an allowed, secured claim of $25 million in each of the Debtors' cases and released all claims the Debtors had against 23 Capital, including claims asserted in the SDNY Action. (A40–A52). In exchange, 23 Capital agreed that it would fund the Trustee's investigation and prosecution of claims ("the Claims"), would partially waive its lien on the Claims

2

and their proceeds by sharing any recovery with the Debtors' Estates from the first dollar received, and would make a non-refundable advance payment to the Estates of $75,000 on account of those recoveries. (A40-A52). The Stipulation also provided for the retention of Troutman Sanders LLP ("Troutman") (*i.e.*, 23 Capital's attorneys in the SDNY Action) and Ashby & Geddes, P.A. ("Ashby") (together, "Special Counsel") to pursue the Claims on behalf of the Estates.

Consistent with the terms of the Stipulation, on October 15, 2018, the Trustee filed an employment application, seeking an order authorizing the retention and employment of Special Counsel to the Trustee for the "limited purpose of investigating, prosecuting, and settling the Claims . . ." (A47 ¶ 16). The Goodwins objected to the Stipulation and Employment Application, primarily on the ground that Troutman had an actual conflict-of-interest in simultaneously representing 23 Capital in the SDNY Action and the Trustee as Special Counsel. (A53–A72; A100–A111 at 15:18–26:25; A216). The United States Trustee did not object to Special Counsel's retention, nor did any creditor other than the Goodwins. (A215).

On November 5, 2018, the Bankruptcy Court held a hearing on the Stipulation and Employment Application. (A86-A125). Counsel for the Trustee explained:

> The settlement is the result of extensive negotiation and reflects the exercise of the Trustee's business judgment. It allows the estates to pursue expensive and uncertain litigation, risk free, and provides administrative solvency and a potential for out-of-the-money unsecured creditors to receive a distribution.
>
> The interest[s] of the Trustee and 23 Capital are completely aligned here for a limited purpose upon which special counsel was being retained. The Trustee has investigated 23 Capital, through independent counsel, and special counsel has had absolutely no role in that investigation. As a result of that investigation, the Trustee is determined to release 23 Capital. And retain special counsel solely to investigate and litigate claims against other third-parties.

(A92 at 7:8-13; A98–A99 at 13:22-14:6). The Bankruptcy Court agreed with the Trustee. (A120 at 35:14-24; A122 at 37:8-23). The Bankruptcy Court entered the Stipulation Order (A73–A85)

3

and Retention Order (A126–A128) on November 5, 2018, and November 13, 2018, respectively. The Retention Order holds that "Special Counsel's employment is necessary and in the best interests of the Debtors and their Estates" and authorized the Trustee "to employ and retain Special Counsel as special litigation counsel to the Trustee for the limited purpose of investigating, prosecuting, and settling the Claims as set forth in the Stipulation." (A127). The Retention Order further provides that "[i]n the event that 23 Capital seeks to take a position adverse to the Trustee or the Estates in these chapter 7 cases, 23 Capital shall retain alternative conflicts counsel and shall not use [Special Counsel] for such purposes, unless the Trustee subsequently affirmatively agrees otherwise in writing." (A128 ¶ 7).

On November 16, 2018, the Goodwins appealed the Stipulation and Retention Orders to this Court. (A129–A131). The Orders were affirmed on February 5, 2020. *In re Decade, S.A.C., LLC*, C.A. No. 18-1880-MN, 2020 WL 564903 (D. Del. Feb. 5, 2020) (A211–A231). With respect to the Retention Order, this Court held that "[t]he Bankruptcy Court did not abuse its discretion in approving the Trustee's retention of Special Counsel" (A230), as Special Counsel did not hold, nor did it represent, an interest adverse to the Estates. (A225; A230–A231). This Court further rejected the Goodwins' arguments that an actual conflict of interest existed because Special Counsel was "being retained to investigate and prosecute claims on behalf of the Debtors and not as general bankruptcy counsel – Archer & Greiner has that role." (A229). Any concerns of a conflict were ameliorated by the terms in the Stipulation providing that the "Trustee, not 23 Capital, controls the prosecution of the claims" and "[t]o the extent there are disagreements between the parties, the [Stipulation] is clear that Special Counsel may not be involved in those." (A230). The Goodwins did not appeal the District Court Order.

4

### C. The Adversary Proceeding

Although the Goodwins' appeal of the Stipulation Order and Retention Order was still pending, on January 23, 2019, the Trustee, by and through Special Counsel, filed his *Complaint for Declaratory Judgment Determining Property of the Debtors' Estates* against the Goodwins. (A132–A143). On February 25, 2019, the Goodwins filed their answer, asserting four counterclaims: (i) declaration of fraud in the execution; (ii) declaration of fraudulent misrepresentation; (iii) declaration of fraudulent inducement; and (iv) declaration of unenforceability. (A144–A174).

On August 23, 2019, the Trustee filed the *Trustee's Motion for Summary Judgment*, seeking summary judgment on count one of his Complaint and seeking dismissal of each of the Goodwins' four counterclaims. (A175–A176). On January 29, 2020, the Bankruptcy Court entered an Opinion awarding the Trustee "summary judgment on three of the Goodwins' counterclaims; specifically, for fraud in the execution, fraudulent misrepresentation, and fraudulent inducement as the Defendants cannot establish the requisite elements of these claims" ("the Summary Judgment Opinion"). (A177–A210). The Summary Judgment Opinion resolved almost all issues between the parties and ordered that trial would proceed solely on the issues of substantial performance and ratification. (A208).

### D. The Trial

On October 12, 2021, the Bankruptcy Court conducted its first day of trial (A321–A503) with the parties giving their opening statements and Aaron testifying on direct for the Goodwins. On the second day of trial, prior to the resumption of Aaron's direct examination – and without any cross-examination – the Bankruptcy Court informed the parties that it "might entertain a motion, under Rule 60(b)(6), to vacate the Court's [summary judgment] decision" because the evidence presented by Aaron on direct examination "was not the evidence as [the Bankruptcy

5

Court] apprehended it at the time when the Court entered its summary judgment decision quite some time ago." (A507–A508 at 4:21-5:8).

Later that evening, the Bankruptcy Court entered an Order: vacating the Summary Judgment Opinion, denying the Trustee's Motion for Summary Judgment, and ordering the trial to proceed immediately on the merits of the complaint and *all* counterclaims. (A318–A320). The Bankruptcy Court denied the Trustee's request for a brief 12-day continuance and required the Trustee to try his case on less than sixteen hours' notice.

### E. The Declaratory Judgment Opinion

After trial concluded, on December 17, 2021, the parties submitted their respective Proposed Findings of Fact and Conclusions of Law. (A647–A788). With respect to those submitted by the Goodwins, sixteen paragraphs relied, at least in part, on trial exhibits that had never been introduced nor admitted into evidence: DX21, DX22, DX23, DX25, DX30, DX32, DX35, DX36, DX37, DX44, DX49, DX57. (A647–A714). The Declaratory Judgment Opinion adopted all sixteen paragraphs. The Declaratory Judgment Opinion "did not make any findings that 23 Capital's actions were fraudulent." (A1058 ¶ 20). The introduction of the Declaratory Judgment Order, however, states that 23 Capital "aided and abetted" Decade's fraud on the Goodwins, without citing any support in the record. (A789). Only 12 paragraphs in the Conclusions of Law section of the Declaratory Judgment Opinion referenced 23 Capital, and none of them attributed any wrongdoing or fraud to 23 Capital. (A830–A859 ¶¶ 266, 268, 273, 275, 297, 298, 331, 332, 334, 340, 349, 358). Following issuance of the Declaratory Judgment Opinion, the Court issued its Post-Trial Order, finding against the Trustee on his two claims and in favor of the Goodwins on their four counterclaims. (A861–A862).

6

F. **The Order to Show Cause**

Based on the Declaratory Judgment Opinion, on January 4, 2022, the Bankruptcy Court *sua sponte* issued an Order to Show Cause ("the OSC"), requiring that the Trustee "show cause as to why the terms and conditions of the employment of Special Counsel as set forth in the Stipulation should not be rescinded or modified in accordance with 11 U.S.C. § 328(a),"[2] and scheduling an evidentiary hearing for February 14, 2022 ("the OSC Hearing"). (A863–A868).

The Trustee's January 18, 2022, response to the Court's OSC (A869–A888), raised three arguments, each pursuant to Section 328(a) – the only statute provided in the OSC. First, the Trustee argued that the Bankruptcy Court lacked authority to rescind the Trustee's employment of Special Counsel because "[b]y its plain language, Section 328(a) only permits a court to revisit and modify a professional's *fee* arrangement – not to alter or terminate the professional's *employment*." (A876–A877). Second, the Trustee argued that because Special Counsel's employment was ongoing, Special Counsel's employment and fee arrangement under the Stipulation Order and Retention Order may not be modified or rescinded because "[u]nder the plain language of Section 328(a), a court may alter the compensation that a professional would otherwise receive only '*after the conclusion of such employment*.'" (A877–A878). Third, the Trustee argued that Section 328(a)'s improvidence standard was not satisfied because: (a) there were no developments in the case that were incapable of being anticipated when Special Counsel's

---

2   Section 328(a) provides: "The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow **compensation different** from the compensation provided under such terms and conditions **after the conclusion of such employment**, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a) (emphasis added).

7

employment and fee arrangement were pre-approved by the Court; (b) no fees were incurred by the Debtors' Estates; (c) the parties agreed to further modifications of the Stipulation to the benefit of the Debtors' Estates; and (d) the Trustee and the Debtors' Estates would be prejudiced by recission or modification of Special Counsel's employment. (A878–A884).

That same day, 23 Capital filed a response to the OSC in the main bankruptcy case. (A889–A891). Like the Trustee, 23 Capital stated that the *status quo* had not changed and that any request for a modification or a rescission of Special Counsel's employment under the Stipulation and Employment Application should be denied. (A889–A891). In the Goodwins' Response to the Trustee's Brief with Respect to the Order on Rule to Show Cause, the Goodwins did not dispute the Trustee's first two arguments but argued only that, pursuant to Section 328(a), the Court should modify the Stipulation in material ways and require Special Counsel to disgorge all legal fees it received because Special Counsel breached its duty of candor when, two and a half years before, Special Counsel produced three documents a few weeks after the close of fact discovery but over two years before trial. (A903–A908).

### G.  The OSC Hearing

Following a status conference, the parties participated in a hearing on the OSC ("the OSC Hearing") on February 16, 2022. Consistent with the parties' briefing, the parties' oral arguments focused solely on Section 328(a), and neither party presented any arguments regarding Sections 105[3] or 327,[4] or any other statute or rule pertaining to disqualification of Special Counsel.

---

[3]  Section 105 of the Bankruptcy Code provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C § 105(a).

[4]  Section 327 of the Bankruptcy Code provides, in relevant part:

8

(A944–A1050). On February 17, 2022, the Bankruptcy Court entered the Disqualification Order, vacating with prejudice the Stipulation Order and the Retention Order. (A1051–A1070). The Bankruptcy Court held that "[d]ue to the Court's vacatur of summary judgment on the second day of trial and subsequent findings of fraud after trial (including possible suspect behavior by 23 Capital), an actual conflict of interest with respect to Special Counsel's representation of both 23 Capital and the Trustee has materialized." (A1064 ¶ 31). The Bankruptcy Court found that an actual conflict of interest existed in two respects: (1) "Special Counsel [was] acting on behalf of the Trustee throughout this litigation, whilst also re-negotiating the Stipulation on behalf of 23 Capital"; and (2) Special Counsel was representing the Trustee and 23 Capital in the Adversary Proceeding while also "negotiating tolling agreements on behalf of 23 Capital with the law firm that represented 23 Capital, Loeb & Loeb LLP . . . and the law firm that represented Decade's principals, Gordon Rees." (A1065–A1066 ¶¶ 33-34). As a result, the Court held that there is an "actual, non-waivable conflict requiring Special Counsel's disqualification" pursuant to Sections 105 and 327. (A1061–A1065 ¶¶ 24-29, 33).

---

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

. . .

(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327 (a), (c).

### H. Appeal of the Disqualification Order

On March 29, 2022, the Chapter 7 case and all associated cases, including the Adversary Proceeding against the Goodwins, were transferred to The Honorable J. Kate Stickles following the retirement of The Honorable Christopher S. Sontchi. (A1276). On February 9, 2023, based on the Declaratory Judgment Opinion, the Bankruptcy Court formally entered judgment against the Trustee on his two claims and in favor of the Goodwins on their four counterclaims. (A1293–A1295).

On February 24, 2023, 23 Capital timely filed this appeal. On May 9, 2024, 23 Capital filed its Opening Brief in support of this appeal (D.I. 15) ("the Opening Brief"). By this appeal, 23 Capital has appealed from the Bankruptcy Court's Disqualification Order "and Orders leading thereto entered by the [Bankruptcy Court]." (D.I. 15 at 1). On February 24, 2023, the Trustee also timely filed appeals of the Disqualification Order as well as certain other Orders of the Bankruptcy Court.[5] The Trustee's appeals and this appeal were later consolidated for procedural purposes.

### I. The Settlement Stipulation

After the appeals were filed, the Trustee engaged in negotiations with the Goodwins as well as 23 Capital and the Debtors' pre-petition law firm, Gordon Rees. Following multiple mediation sessions with The Honorable Craig T. Goldblatt between the Trustee, 23 Capital, and Gordon Rees, the Trustee reached two settlements: (i) a settlement by and between the Trustee and the Goodwins ("the Goodwin Settlement") and (ii) a settlement by and among the Trustee, 23 Capital, and Gordon Rees ("the 23 Capital/Gordon Rees Settlement"). The 23 Capital/Gordon Rees Settlement provides:

> "WHEREAS, after trial in the Delaware Adversary Proceeding the Bankruptcy Court entered declaratory judgment in favor of the Goodwins, and against the Trustee, declaring the agreements

---

5   The Trustee's appeals were docketed at C.A. Nos. 23-201-MN and 23-203-MN.

10

> between the Debtors and the Goodwins were void due to fraud by the Debtors." (B034).
>
> "WHEREAS, on July 18, 2023, the Parties attended a mediation before the Honorable Craig T. Goldblatt of the United States Bankruptcy Court for the District of Delaware. As a result of the mediation efforts by Judge Goldblatt, the Parties have reached the resolutions embodied in this Stipulation which, subject to Court approval, ***fully settle and resolve the Parties' respective claims relating to, and in any way arising from, the Decade Deal and the Loan***." (*Id.* (emphasis added)).
>
> "Effective Date. This Stipulation shall be effective . . . upon the entry of a final, non-appealable order by the Court approving this Stipulation." (*Id.* § 2).
>
> "23 Capital's Release of Claims. In consideration of the mutual agreements contained herein, the adequacy of which are hereby acknowledged, 23 Capital . . . hereby releases, waives, forever discharges and foregoes against the Trustee, the Debtors and their Estates and any and all of their respective attorneys . . ., representatives, administrators, successors, assigns, insurers, and other persons acting on their behalf from any and all rights, claims, demands, costs, expenses, attorneys' fees, causes of action, debts, obligations, appeals, and liabilities arising from the Decade Deals, the Loan, and the Debtors' bankruptcy cases." (B036, § 6(c)).

On March 18, 2024, the Bankruptcy Court granted the Trustee's motion, pursuant to Federal Rule of Bankruptcy Procedure 9019, and approved the 23 Capital/Gordon Rees Settlement. (B029, at 2). The Bankruptcy Court's order approving the 23 Capital/Gordon Rees Settlement has not been appealed. As a result of this final order, the Trustee dismissed his appeals.

This remaining appeal is fully briefed. (D.I. 15, 22, 21, 24). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II.   JURISDICTION

This Court has appellate jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a). The Bankruptcy Court entered the final, appealable Judgment on

February 9, 2023, and 23 Capital timely appealed on February 23, 2023. (A1406–A1515). The Goodwins dispute whether 23 Capital has standing to bring the appeal and whether the Court has subject matter jurisdiction over the appeal based on the 23 Capital/Gordon Rees Settlement and constitutional mootness. (D.I. 22 at 2-9).

The Constitution "limits the federal courts to adjudication of 'Cases' and 'Controversies.'" *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 205 (3d Cir. 2021) (citing U.S. Const., art. III, § 2, cl. 1). "Courts enforce the case-or-controversy requirement through the several justiciability doctrines," including, as relevant here, "standing" and "mootness." *Id.* (quotation marks omitted). "'[T]he party invoking federal jurisdiction[] bears the burden of establishing'" the justiciability of the matter at hand. *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Standing has three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 278 U.S. at 338. "Appellate standing in the bankruptcy context is more restrictive than Article III standing, which 'need not be financial and need only be 'fairly traceable' to the alleged illegal action.'" *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 215 (3d Cir. 2004) (quoting *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995)). Accordingly, the Third Circuit has "denied standing to parties involved in bankruptcy proceedings 'who, even though they may be exposed to some potential harm incident to the bankruptcy court's order, are not 'directly affected' by that order.'" *Id.* (quoting *Travelers*, 45 F.3d at 741).

Finally, before proceeding to the merits, the Court must consider "whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007) (quotation marks omitted). "[I]t does not matter when the case becomes moot. The requirement that a case or

controversy be 'actual [and] ongoing' extends throughout all stages of federal judicial proceedings, including appellate review." *Id.* (quoting *Khodara Envtl., Inc. v. Beckman*, 237 F.3d 186, 192-93 (3d Cir. 2001)).

### A. The Disqualification Order

The 23 Capital/Gordon Rees Settlement does not bar or moot the appeal. 23 Capital "release[d], waive[d], forever discharge[d] . . . against the Trustee, the Debtors and their Estates and any and all of their respective attorneys (including but not limited to Gordon Rees, and all other current and former partners or employees of Gordon Rees), representatives, administrators, successors, assigns, insurers, and other persons acting on their behalf from any and all rights, claims, demands, costs, expenses, attorneys' fees, causes of action, debts, obligations, appeals, and liabilities arising from the Decade Deals, the Loan, and the Debtors' bankruptcy cases." (B019). The 23 Capital/Gordon Rees Settlement does not mention anything about 23 Capital releasing or waiving its right to appeal the Disqualification Order. (B014-B023). Moreover, 23 Capital asks this Court to "fashion effective relief that would not disturb the settlements." (D.I. 15 at 3). (*See also* D.I. 19 at 4 ("23 Capital released its claims [against the Debtors' estates], and waived its right to pursue an appeal relating to any such claims, but this Appeal . . . has nothing to do with 23 Capital's Claims against the [Debtors'] Estates")).

23 Capital has standing to challenge the Disqualification Order because 23 Capital is a party "aggrieved by an order of the [B]ankruptcy [C]ourt." *See In re Revstone Indus. LLC*, 690 F. App'x 88, 89 (3d Cir. 2017) (citation omitted). "To be a person aggrieved, a party must challenge an order that "diminishes their property, increases their burdens, or impairs their rights." *Id.* (quoting *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000)). The Disqualification Order disqualified the Firms from "further representing the Trustee and 23 Capital in connection with this litigation." (A1067). To the extent the Disqualification Order is interpreted to mean that the

13

Firms cannot represent 23 Capital in the main bankruptcy or in other related actions, then 23 Capital has lost "an important right" in choosing its counsel that continues to exist until the Disqualification Order is vacated. *Int'l Bus. Machs. Corp. v. Levin*, 579 F.2d 271, 277-78 (3d Cir. 1978); *see also Nw. Nat'l. Ins. Co. v. Insco, Ltd.,* 866 F. Supp. 2d 214, 221 (S.D.N.Y. 2011) ("disqualification has an immediate adverse effect on the client by separating [them] from counsel of [their] choice"). To the extent there are any subsequent proceedings involving 23 Capital, previously a secured lender, 23 Capital has an "important right" in selecting the counsel of its choice. If a court can fashion "some form of meaningful relief," an appeal is not constitutionally moot. *Church of Scientology of Calif. v. U.S.*, 113 S. Ct. 447, 450 (1992); *see also In re PWS Holding Corp.*, 228 F.3d 224, 236 (3d Cir. 2000) ("Constitutional mootness implicates the Article III case or controversy requirement; an appeal is moot in the constitutional sense only if events have taken place that make it impossible for the court to grant any effectual relief whatever.") (citations and quotations omitted). This Court can fashion meaningful relief to 23 Capital by reversing and vacating the Disqualification Order.

### B.      The Declaratory Judgment Opinion

Pursuant to its plain text, however, the 23 Capital/Gordon Rees Settlement bars 23 Capital's present appeal to the extent that 23 Capital seeks reversal or modification of the Bankruptcy Court's post-trial Declaratory Judgment Opinion, as such an appeal "arises from" the "Decade Deals," including the SPA that the Bankruptcy Court determined to be invalid. (*See* A789-90; A834-53). 23 Capital released all claims and appeals "aris[ing] from" the Decade Deals. This Court lacks jurisdiction to review the merits of 23 Capital's released claims.[6]

---

[6]   The Court agrees with 23 Capital that "the Court need not vacate the Declaratory Judgment Opinion in its entirety – or potentially at all – to vacate the Disqualification Order." (D.I. 24 at 3 n.5).

14

*See Rendell*, 484 F.3d at 241. Accordingly, the appeal of the Declaratory Judgment Opinion is dismissed for lack of subject matter jurisdiction. *Ellison*, 11 F.4th at 204-05.

### III. ANALYSIS

#### A. Reversal of the Disqualification Order is Unopposed

As 23 Capital correctly points out, "the heart of this appeal – reversal of the Disqualification Order – is uncontested." (D.I. 24 at 1). In its Opening Brief, 23 Capital argues that the Disqualification Order should be reversed and vacated because (1) an actual conflict of interest did not exist between 23 Capital and the Trustee, as the Stipulation created a unity of interest between them which was not disrupted, and any conflict had been waived;[7] and (2) the Bankruptcy Court's issuance of the Disqualification Order violated 23 Capital's right to due process because 23 Capital was not afforded particularized notice and an opportunity to be heard. These arguments are not disputed. (D.I. 22 at 2 n.3 ("For the avoidance of doubt, the Goodwins take no position with respect to the merits of 23 Capital's arguments for reversal of the Bankruptcy Court's disqualification opinion and order."); D.I. 21 at 5 ("The Trustee files this Limited Response solely for the purposes of making it clear that any relief sought in this Appeal cannot impact the Goodwin Settlement or the 23 Capital/Gordon Rees Settlement")).

#### B. Entry of the Disqualification Order Was an Abuse of Discretion

The determination to disqualify counsel is reviewed for abuse of discretion, although the Bankruptcy Court's underlying legal conclusions are reviewed *de novo* and factual findings are reviewed for clear error. *See In re NNN 400 Capitol Ctr. 16 LLC*, 632 B.R. 243, 255 (D. Del 2021), *aff'd* 2022 WL 17831445 (3d Cir. Dec. 21, 2022). A court abuses its discretion when it

---

[7] With respect to 23 Capital's argument that an actual conflict of interest did not exist between 23 Capital and the Trustee, as the Stipulation created a unity of interest between them which was not disrupted, the Court has already decided this issue. *See In re Decade, S.A.C., LLC*, 2020 WL 564903, at *7.

"bases its opinion on a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact." *In re Prosser*, 777 F.3d 154, 161 (3d Cir. 2015) (internal quotation marks omitted).

23 Capital argues that "[e]ven if the Bankruptcy Court did not err in finding an actual, nonwaivable conflict of interest warranting the Firms' disqualification, the procedures through which the Disqualification Order was granted violated due process and warrants reversal as a matter of law." (D.I. 15 at 37). Specifically, "23 Capital was not afforded particularized notice and an opportunity to be heard." (*Id.*). The OSC required the Trustee to "show cause as to why the terms and conditions of the employment of Special Counsel as set forth in the Stipulation should not be rescinded or modified **in accordance with 11 U.S.C. § 328(a)**." (A867). The Bankruptcy Court ultimately held that there is an "actual, non-waivable conflict requiring Special Counsel's disqualification" **pursuant to 11 U.S.C. § 105 and 11 U.S.C. § 327**. (*Id.* ¶¶ 24-29).

Disqualification of counsel is a "severe sanction." *Elonex I.P. Holdings, Ltd. v. Apple Comput., Inc.*, 142 F. Supp. 2d 579, 583 (D. Del. 2001) (exercising discretion to deny motion to disqualify for conflict of interest). Therefore, before an attorney may be disqualified, the Due Process Clause of the Fifth Amendment requires a federal court to provide, at minimum, "notice and an opportunity to be heard." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 191 (3d Cir. 2002).

To satisfy this requirement, the notice must be sufficiently "particularized," meaning "notice of the precise [] tool that the court intends to employ." *In re Prudential,* 278 F.3d at 191 (reversing District Court's imposition of sanctions pursuant to its inherent powers, holding that counsel's due process rights had been violated because he had not been afforded adequate notice and given an opportunity to be heard); *accord In re Crofford,* 301 B.R. 880, 882-84 (B.A.P. 8th Cir. 2003) (holding that Bankruptcy Court "failed to provide notice of its intent to impose sanctions

pursuant to 11 U.S.C. § 105"); *see also United States v. Muflahi*, 317 F. Supp. 2d 208, 216 (W.D.N.Y. 2003) (defense counsel entitled to "opportunity to be heard" prior to being disqualified due to alleged conflict of interest).

Here, the Disqualification Order was granted without affording 23 Capital particularized notice and an opportunity to be heard. The Disqualification Order (A1051–A1070) was predicated on 11 U.S.C. §§ 105 and 327 – neither of which were noticed in the Bankruptcy Court's OSC (A863–A868), briefed by the parties (A869–A924), or discussed during the OSC Hearing (A944–A1050). Rather, the OSC was limited to potential relief "***in accordance with 11 U.S.C. §328(a),***" and, thus, the parties' briefing and evidence focused exclusively on the factors listed in that provision. The Trustee clearly limited all arguments to stay within the scope of the OSC:

> In its OSC, the Court ordered a hearing and briefing "as to why the terms and conditions of the employment of Special Counsel as set forth in the Stipulation should not be rescinded or modified in accordance with 11 U.S.C. § 328(a)." *See* OSC at 5. Accordingly, the Trustee's response to the Goodwins' inflammatory rhetoric is solely limited to the scope of Section 328(a). ***To the extent the Goodwins seek relief outside the scope of Section 328(a), the Trustee respectfully submits that due process requires a separate motion and briefing schedule.***

(A912 n.2 (emphasis added)). Recognizing that no advance notice had been provided, the Bankruptcy Court, in the Disqualification Order, held that it may *sua sponte* take "any action or mak[e] any determination necessary or appropriate to . . . prevent an abuse of process" (A1062) (quoting 11 U.S.C. § 105), including the ability to "consider the issue of whether Special Counsel has a disqualifying conflict of interest *sua sponte* and independent of the issue of whether the terms of Special Counsel's employment were improvident at the time the parties entered into the Stipulation under 11 U.S.C. § 328(a)," (A1062) (relying on 11 U.S.C. § 327(c)).

The Court agrees with 23 Capital that the Bankruptcy Court's reasoning does not resolve the due process issue raised here. Whether the Court could *sua sponte* raise issues under Sections

17

105 and 327 is distinct from the due process requirement that the Court must provide "notice of the precise [] tool that the court intends to employ." The Trustee and 23 Capital were not given notice and an opportunity to be heard on those unique statutory provisions. The Trustee and 23 Capital were entitled to notice of the basis on which the Bankruptcy Court intended to rule so they could address the particular factors relevant to the issues raised by the Court. *See Crofford,* 301 B.R. at 884 (holding that due process under Section 105 of the Bankruptcy Code requires "notice and an opportunity to respond").

In *Crofford,* the court held that the lower court "failed to provide notice of its intent to impose sanctions pursuant to 11 U.S.C. § 105 and therefore could not rely on such provision for the award of sanctions" because the Bankruptcy Court failed to expressly mention 11 U.S.C. § 105 in its order to show cause. *Id.* at 882. Rather, the show cause order demanded that the "Debtors and their counsel [] show cause why they should not be sanctioned under Rule 9011(c)(1)(B)." *Id.* at 885. The court's omission of 11 U.S.C. § 105 from its order to show cause, the Bankruptcy Panel held, precluded the issuance of sanctions under the court's inherent powers or 11 U.S.C. § 105. *Id.* (holding that "the imposition of sanctions should be limited to the authority [Rule 9011] pursuant to which notice of the possibility of sanctions was issued").

Similarly, in *In re Prudential*, this Court issued sanctions against counsel pursuant to the Court's inherent power and 28 U.S.C. § 1927, although only relief pursuant to the latter had been noticed. 278 F.3d at 193. The Third Circuit reversed the District Court's imposition of non-monetary sanctions pursuant to its inherent powers (28 U.S.C. § 1927), holding that counsel's due process rights had been violated because counsel had not been afforded adequate notice and given an opportunity to be heard. *Id.* ("We do not believe that the notice afforded Malakoff was sufficient to allow the court to impose the non-monetary sanctions that were imposed under the court's inherent power. Accordingly, that order will be reversed.").

18

Here, the Bankruptcy Court's OSC was strictly limited to "why the terms and conditions of the employment of Special Counsel as set forth in the Stipulation should not be rescinded or modified *in accordance with 11 U.S.C. §328(a)*." (A867 (emphasis added)).  There was no mention of Section 105 or 327, or any other statutory or common law basis for disqualification beyond Section 328(a).  The parties followed the terms of the OSC and limited their briefing and evidence at the OSC Hearing to the scope of Section 328(a).  By predicating the Disqualification Order on Section 105 and 327 – without providing particularized notice about the Bankruptcy Court's intent to employ them – 23 Capital was denied due process.

## IV. CONCLUSION

Accordingly, the Disqualification Order will be reversed.  An appropriate order follows.